**NOT FOR PUBLICATION**



## UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   OR-14-1036-KiKuJu |
| PACIFIC CARGO SERVICES, LLC, | Adv. No.   13-03212 |
| Debtor. | Bk. No.   13-30439-TMB |
| KYLE MCCRACKEN; GUY OAKES, | |
| Appellants, | |
| v. | **M E M O R A N D U M**[1] |
| STEPHEN P. ARNOT, Chapter 7 Trustee, | |
| Appellee. | |

Submitted Without Oral Argument
on January 22, 2015[2]

Filed - February 19, 2015

Appeal from the United States Bankruptcy Court
for the District of Oregon

Honorable Trish M. Brown, Bankruptcy Judge, Presiding

APPEARANCES:   Toby J. Marshall and Michael D. Daudt of Terrell
Marshall Daudt & Willie PLLC on brief for
appellants Kyle McCracken and Guy Oakes; David A.
Foraker of Greene & Markley, P.C. on brief for
appellee Stephen P. Arnot, Chapter 7 Trustee.

---

[1] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may have
(see Fed. R. App. P. 32.1), it has no precedential value. See 9th
Cir. BAP Rule 8024-1.

[2] On September 16, 2014, the parties filed a joint
stipulation to waive oral argument.

Before: KIRSCHER, KURTZ and JURY, Bankruptcy Judges.

Appellants Kyle McCracken and Guy Oakes ("Appellants") appeal a judgment determining that the prepetition assignment of certain legal malpractice claims from Pacific Cargo Services, LLC ("Debtor") to Appellants was a voidable preferential transfer under § 547(b).[3]  We AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

## A.    Prepetition events

The facts in this appeal are undisputed.  Debtor, an Oregon limited liability company, provided courier services in Oregon and Washington.  Just three days before filing its chapter 11 bankruptcy case, Debtor and its five affiliates merged.

Appellants are former employees of Debtor.  In August 2011, Appellants filed a class action lawsuit against Debtor in Washington state court alleging Debtor violated wage and hour laws in both Oregon and Washington ("Class Action").

On January 3, 2013, after approximately 18 months of litigation, Appellants (on behalf of the class claimants) and Debtor entered into a settlement agreement ("Settlement Agreement").[4]  Debtor agreed to a stipulated judgment of

---

[3] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.  The Federal Rules of Civil Procedure are referred to as "Civil Rules."

[4] One of Debtor's insiders, Mr. Holman, was also a party to the Class Action and the Settlement Agreement.  Mr. Holman, however, was not a party to Trustee's preference action.  Thus, any assignment of the claims at issue have not been avoided as to him.

-2-

approximately $1.6 million in actual and exemplary damages arising from hour and wage violations.  Debtor also agreed to assign to Appellants any legal malpractice claims (the "Malpractice Claims") Debtor had against the attorneys who advised Debtor on its wage and hour practices.  In exchange for the assigned Malpractice Claims, Appellants agreed not to execute on the stipulated judgment.

The Settlement Agreement included the following provisions:

1.l.  "Malpractice Claims" shall mean any and all claims for malpractice that Defendants individually or collectively have or will have against Nancy Cooper, any other person at Garvey Schubert Barer, and the law firm of Garvey Schubert Barer over any advice or other professional services provided to Defendants **before** the commencement of this Action regarding Defendants' Wage and Hour Practices, including but not limited to Defendants' Flat Rate Pay Practice.

. . .

3.d.  Defendants represent and warrant that they relied on the legal advice of lawyer Nancy Cooper in the Portland, Oregon office of Garvey Schubert Barer in developing, implementing, and maintaining Defendants' Flat Rate Pay Practice and in not providing Overtime Compensation to Plaintiffs and Class Members.  Defendants further represent and warrant that their practice of not paying Overtime Compensation to Class Members was carried out in accordance with the legal advice provided by Nancy Cooper and Garvey Schubert Barer.

3.e.  Defendants represent and warrant that they believe in good faith they have valid claims for legal malpractice against Nancy Cooper and Garvey Schubert Barer arising out of the legal advice referenced in the preceding subsection.

3.f.  Defendants represent and warrant that they do not have the financial resources or the time necessary to continue properly defending themselves in the Action.

3.g.  Defendants represent and warrant that they do not have the resources to pursue the Malpractice Claims.

(emphasis added).

The Settlement Agreement further provided that if the state court failed to grant final approval of the settlement or if

-3-

Appellants were precluded from pursuing the Malpractice Claims assigned by Debtor, the agreement would become null and void and the parties would be returned to the status quo ante, as if they had never entered into or agreed to the terms of the Settlement Agreement.  If that occurred, the parties would continue litigating the Class Action.

**B.      Postpetition events**

On January 28, 2013, twenty-five days after the parties executed the Settlement Agreement but before the state court approved it, Debtor filed a chapter 11 bankruptcy case.  Due to the automatic stay, the state court overseeing the Class Action did not rule on a motion to approve the Settlement Agreement.

On August 2, 2013, the bankruptcy court converted Debtor's chapter 11 case to a chapter 7 case. The U.S. Trustee appointed Stephen Arnot ("Trustee") as trustee.  Debtor's unsecured debts of approximately $8.3 million far exceeded the value of its assets, so Debtor's unsecured creditors did not expect to receive any distribution.

**1.      Trustee's preference action**

On August 27, 2013, Trustee filed his complaint against Appellants seeking to avoid Debtor's prepetition assignment of the Malpractice Claims as a preferential transfer under § 547(b). Appellants' answer denied the operative allegations of Trustee's complaint, raised a number of affirmative defenses and asserted counterclaims for declaratory relief and for an award of attorney's fees under Washington law

**2.      Malpractice action is filed**

On September 17, 2013, to avoid any statute of limitations

-4-

defenses, Appellants filed a malpractice action in the Oregon state court against Debtor's former counsel. The state court abated further proceedings in the case on November 5, 2013, pending the outcome of Trustee's preference action.

### 3. The parties' cross-motions for summary judgment on the preference action

Trustee moved for summary judgment on his preference claim ("MSJ"). With virtually no analysis, Trustee asserted that the assigned Malpractice Claims constituted "an interest of the debtor in property," as that phrase is used in § 547(b). Trustee further asserted that Appellant's counterclaim for attorney's fees should be dismissed because fees for prosecuting or defending a preference action are not allowed under federal law; Appellants' reliance on Washington law did not alter that argument.

Appellants opposed the MSJ and filed a cross-motion for summary judgment on their claims for declaratory relief and attorney's fees ("Cross MSJ"). In short, Appellants argued that because the Malpractice Claims had not accrued under Oregon law before Debtor filed its bankruptcy petition, Debtor had no interest in them on the petition date (outside of the Settlement Agreement, which had not yet been approved). As a result, argued Appellants, the Malpractice Claims did not belong to the estate, and the first element of Trustee's preference claim — that Debtor transferred "an interest of the debtor in property"[5] – could not be established. Thus, argued Appellants, the MSJ should be denied

---

[5] The remaining elements for a claim under § 547(b) are undisputed by Appellants; they do not dispute the bankruptcy court's determination with respect to them on appeal.

-5-

and their Cross MSJ should be granted to include an award of attorney's fees.

Appellants contended that under Washington law, employees are entitled to reasonable attorney's fees in a case where they recover wages that are owed them or in any subsequent proceeding related to the action in which wages are recovered. In the Class Action, Debtor agreed to a stipulated judgment of $1.6 million to compensate employees for lost overtime wages. On behalf of Debtor's estate, Trustee in his preference action sought relief that, if granted, would nullify the stipulated judgment. Appellants argued this subsequent proceeding related directly to the Class Action providing for the recovery of wages, including attorney's fees against the Trustee, if they prevailed against Trustee.

In opposition to the Cross MSJ, Trustee argued the relevant issue involved whether the Malpractice Claims, when assigned to Appellants, constitiued an "interest of the debtor in property," as that phrase is used in § 547(b). He further argued the issue did not involve whether the Malpractice Claims accrued under Oregon law after the petition date and as a consequence did not become part of the bankruptcy estate. Trustee asserted that: (1) all causes of action in the case of a non-individual debtor, such as a limited liability company, become property of the debtor's estate under § 541 because a non-individual debtor has no existence or identity separate from its estate after the filing of a bankruptcy case; (2) absent the transfer/assignment, the Malpractice Claims would have been part of Debtor's estate; and (3) no authority supported the notion that a cause of action of a

-6-

non-individual debtor is excluded from the debtor's bankruptcy estate based on when it accrues for state law purposes.

### 4. The bankruptcy court's ruling on the preference action

The bankruptcy court held a hearing on the parties' cross-motions for summary judgment and announced its oral ruling granting Trustee's MSJ and denying Appellants' Cross MSJ in its entirety. Hr'g Tr. (January 6, 2014) 3:7-9; 18:19-38:15.

The court disagreed with Appellants' contention that a legal malpractice cause of action in Oregon does not accrue for purposes of determining a property interest until a client has suffered damages in the form of an adverse "judgment" as a result of his attorney's negligent advice. Id. at 28:7-12. Instead, the cases hold that a "[legal malpractice] cause of action does not accrue until the party has incurred some damage, including expenses incurred in defending a cause of action[,] and is aware that there is a substantial possibility that the damage resulted from the attorney's advice." Id. at 28:12-17. Here, Debtor represented in the Settlement Agreement that it relied upon its attorneys' advice with respect to Debtor's flat rate pay practices and in not providing overtime compensation to the class members. Debtor's practice of not paying overtime compensation to the class members occurred as a result of the legal advice provided by its attorneys. In addition, Debtor represented that it believed in good faith that it possessed valid claims for malpractice against its attorneys arising out of the legal advice provided by them. Given these representations, the bankruptcy court determined that at the time Debtor executed the Settlement Agreement, Debtor suffered damages and believed those damages resulted from its

-7-

attorney's malpractice.  Id. at 29:9-13.  Therefore, the Malpractice Claims when assigned to Appellants constituted an "interest of the debtor in property" within the meaning of § 547(b).  Id. at 30:18-23.

Alternatively, because Debtor also assigned to Appellants any malpractice claims it may have in the future against its former counsel, the bankruptcy court determined that even if the Malpractice Claims had not yet accrued as of the petition date, the court could avoid the transfer.  Id. at 29:14-22.

In denying the Cross MSJ, the bankruptcy court observed the general proposition that an individual debtor's prepetition causes of action are property of the estate, while an individual debtor's postpetition causes of action are not property of the estate.  Id. at 36:5-20).  However, no authority appeared to support Appellants' contention that a cause of action of a non-individual debtor is excluded from the debtor's bankruptcy estate based on when it accrues for state law purposes.  The court found that absent Debtor's prepetition assignment to Appellants, the Malpractice Claims would have been property of the estate.  As for the attorney's fees requested by Appellants, the court determined that no legal basis existed to award a party attorney's fees for prosecuting or defending a preference action.

The bankruptcy court entered a judgment avoiding the prepetition transfer of the Malpractice Claims to Appellants on January 10, 2014.  Appellants timely appealed the judgment on January 24, 2014.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334

-8-

and 157(b)(2)(F). We have jurisdiction under 28 U.S.C. § 158.

# III. ISSUES

1. Did the bankruptcy court err in granting summary judgment to Trustee and avoiding the assignment of the Malpractice Claims as a preferential transfer under § 547(b)?

2. Did the bankruptcy court err in not awarding reasonable attorney's fees to Appellants for defending the preference action?

# IV. STANDARDS OF REVIEW

A grant of summary judgment is reviewed de novo. Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2014). "We may affirm 'on any ground supported by the record, regardless of whether the [bankruptcy] court relied upon, rejected, or even considered that ground.'" Id. (citation omitted). Whether a debtor's cause of action belongs to the bankruptcy estate is a question of law we review de novo. State Farm Life Ins. Co. v. Swift (In re Swift), 129 F.3d 792, 795 (5th Cir. 1997). The bankruptcy court's decision to deny a party's request for attorney's fees under § 547(b) is reviewed de novo. See Bertola v. N. Wisc. Produce Co. (In re Bertola), 317 B.R. 95, 99 (9th Cir. BAP 2004).

# V. DISCUSSION

**A. The bankruptcy court did not err in granting summary judgment to Trustee and avoiding the assignment of the Malpractice Claims as a preferential transfer under § 547(b).**

**1. Summary judgment standards**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fresno Motors, LLC, 771 F.3d at 1125 (citing Civil Rule 56(a)). Civil Rule 56(a) applies in

-9-

adversary proceedings under Rule 7056. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Ilko v. Cal. State Bd. of Equalization (In re Ilko)</u>, 651 F.3d 1049, 1052 (9th Cir. 2011).

**2. Preference actions under § 547(b)**

Under § 547(b), a trustee may recover certain transfers made by the debtor within 90 days before the bankruptcy petition is filed. <u>Hansen v. MacDonald Meat Co. (In re Kemp Pac. Fisheries, Inc.)</u>, 16 F.3d 313, 315 (9th Cir. 1994). A transfer constitutes an avoidable preference if the following six elements are satisfied: (1) a transfer of an interest of the debtor in property; (2) to or for the benefit of a creditor; (3) for or on account of an antecedent debt; (4) made while the debtor was insolvent; (5) made on or within 90 days before the date of the filing of the petition; and (6) enables the creditor to receive more than such creditor would receive in a chapter 7 liquidation of the estate. <u>In re Kemp Pac. Fisheries, Inc.</u>, 16 F.3d at 315 n.1. Appellants dispute the bankruptcy court's determination as to only the first element — that the Malpractice Claims constitute an interest of the Debtor in property within the meaning of § 547(b).

The reach of § 547 is limited to preferential transfers of "an interest of the debtor in property." <u>Taylor Assocs. v. Diamant (In re Advent Mgmt. Corp.)</u>, 104 F.3d 293, 295 (9th Cir. 1997). "In its simplest terms, property of the debtor may be said to be that which would have been property of the bankruptcy estate had the transfer not taken place." <u>Mitsui Mfrs. Bank v. Unicom Computer Co. (In re Unicom Computer Co.)</u>, 13 F.3d 321, 324 (9th Cir. 1994)(citing <u>Begier v. I.R.S.</u>, 496 U.S. 53, 58 (1990)).

-10-

### 3.  Section 541(a) and accrual of causes of action

The question before us is whether the Malpractice Claims accrued prior to the petition date and, thus, would have been property of the estate had Debtor not assigned them to Appellants. Appellants argue that Debtor's interest in the Malpractice Claims against their former counsel did not exist at the commencement of Debtor's bankruptcy case because the claims had not accrued under state law.

An "estate" is created when a bankruptcy petition is filed. See § 541(a); Cusano v. Klein (In re Cusano), 264 F.3d 936, 945 (9th Cir. 2001). "Property of a bankruptcy estate includes 'all legal or equitable interests of the debtor in property as of the commencement of the case.'" In re Cusano, 264 F.3d at 945 (quoting § 541(a)(1)). "In fact, every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." In re Yonikus, 996 F.2d 866, 869 (7th Cir. 1993), abrogated on other grounds by Law v. Siegel, 134 S.Ct. 1188, 1196 (2014)(citing Neuton v. Danning (In re Neuton), 922 F.2d 1379, 1382-83 (9th Cir. 1990)). Although state law defines the nature of a debtor's interest in property, Butner v. United States, 440 U.S. 48, 55 (1979), whether this interest is property of the estate is a matter of federal bankruptcy law. Crowson v. Zubrod (In re Crowson), 431 B.R. 484, 489 (10th Cir. BAP 2010). See Bd. of Trade of Chi. v. Johnson, 264 U.S. 1, 10 (1924)(Property for purposes of federal bankruptcy law is construed broadly to include any state-law right or interest that has some potential value to the debtor.).

Assets of the estate properly include any of the debtor's

-11-

existing causes of action. In re Cusano, 264 F.3d at 945 (citing Sierra Switchboard Co. v. Westinghouse Elec. Corp., 789 F.2d 705, 708 (9th Cir. 1986)); see also United States v. Whiting Pools, Inc., 462, U.S. 198, 205 (1983). A cause of action that has accrued prior to the debtor's petition date is an estate asset that must be scheduled. Boland v. Crum (In re Brown), 363 B.R. 591, 604 (Bankr. D. Mont. 2007)(citing In re Cusano, 264 F.3d at 947). However, a debtor generally has no duty to schedule a cause of action that did not accrue prior to bankruptcy. In re Cusano, 264 F.3d at 947.

To determine when a cause of action accrues and, therefore, whether it accrued prior to a debtor's petition date and is an estate asset, we look to state law. In re Cusano, 264 F.3d at 947 (citing CBS, Inc. v. Folks (In re Folks), 211 B.R. 378, 394 (9th Cir. BAP 1997)). Because the Malpractice Claims stem from legal advice Debtor received from its attorneys in Oregon, we look to Oregon law to determine whether the Malpractice Claims accrued prepetition.

Initially, we note the importance of distinguishing between "accrual" of an action for purposes of ownership[6] in a bankruptcy proceeding and "accrual" for purposes of statute of limitations. In re Cusano, 264 F.3d at 947 (citing In re Swift, 129 F.3d at 796, 798); In re Brown, 363 B.R. at 605. The Ninth Circuit has determined that the inquiry is different, and the fact a statute of limitations has not yet begin to run at the time of petition does not necessarily bear on whether the cause of action has

_____

[6] In this memorandum and in this context we equate "ownership" with "an interest of the debtor in property."

-12-

accrued for purposes of ownership in bankruptcy. In re Cusano, 264 F.3d at 947. In this context of an interest in property, "accrual" of a cause of action is a right to institute and maintain a suit against a person because some form of legal injury has occurred even though the type and extent of injury is unknown, although some specific and concrete risk of harm affects a person's interest. In re Swift, 129 F.3d at 795-96. Accrual in the context of a statute of limitations commences the clock running to bar litigation of stale claims. Id. at 796.

In Cusano, the debtor had contended that because his prepetition music royalty claims had not accrued until after his bankruptcy case was filed, the claims belonged to him and not the bankruptcy estate. Id. at 946-47. The Cusano court disagreed, holding:

> We conclude that Cusano's open book account claim accrued for bankruptcy purposes to the extent that sums were owed on that account at the time he filed his petition. An action could have been brought for those sums at that time. Our conclusion is not affected by the fact that limitations on such an action had not yet begun to run.

Id. at 947.

Nonetheless, even though the inquiry of when an action accrues is different than when the statute of limitations begins to run, "it is often necessary to look to state law on the statute of limitations to determine when a cause of action accrues because accrual is rarely discussed apart from the issue of the running of the statute of limitations." In re Swift, 129 F.3d at 796 n.18; In re Brown, 363 B.R. at 605.

///

///

-13-

**4. The Malpractice Claims constituted an "interest of the debtor in property," accrued prior to the petition date, and would have been property of the estate absent the preferential transfer to Appellants.**

Appellants contend that a claim for legal malpractice does not accrue under Oregon law "until the underlying lawsuit has concluded" or "a final order is entered in the underlying action." In other words, Appellants' position is that the Malpractice Claims will not accrue until the state court enters a final adjudication against Debtor in the underlying Class Action. We agree that an adverse ruling against a client in the underlying action certainly may provide the outer limit for when the statute of limitations begins to run on a legal malpractice claim; however, a court's adjudication of that underlying action is not required for accrual of a legal malpractice claim under Oregon law or, more importantly for our purposes here, a determination of an interest in property.

A claim for legal malpractice must be filed within two years of the date on which the claim accrues. OR. REV. STAT. 12.010; OR. REV. STAT. 12.110(1). Oregon follows the "discovery" rule for determining when a legal malpractice claim accrues. Guirma v. O'Brien, 316 P.3d 318, 319 (Or. App. 2013)(citing U.S. Nat'l Bank v. Davies, 548 P.2d 966, 968 (Or. 1976)). Under the discovery rule, a legal malpractice claim accrues "when a client knows or, in the exercise of reasonable care, should know that there is a substantial possibility that she has an actionable injury." Id. (citing Kaseberg v. Davis Wright Tremaine, LLP, 265 P.3d 777, 781 (Or. 2011)(en banc)). An actionable injury in a legal malpractice claim consists of harm, causation and tortious conduct. Id.

-14-

(citing Kaseberg, 265 P.3d at 781).

Thus, under the discovery rule, a claim for legal malpractice in Oregon "accrues, and the statute of limitations begins to run, when the client knows or, in the exercise of reasonable care, should know that there is a substantial possibility that (1) he or she has suffered harm, (2) the harm was caused by the lawyer's acts or omissions and, [sic] (3) the lawyer's acts or omissions were tortious." Id. (citing Kaseberg, 265 P.3d at 781). "Although a mere suspicion of wrongdoing is insufficient to trigger the accrual of a claim, it is also unnecessary, under the rule of discovery, for the plaintiff to know to a certainty that each particular element exists. The 'quantum of awareness' is between the two extremes." Cairns v. Dole, 99 P.3d 781, 784 (Or. App. 2004). See also Melgard v. Hanna, 607 P.2d 795, 796 (Or. App. 1980)("When discovery of professional negligence may be said to occur is an objective matter, for a claimant is charged with knowledge which exercise of reasonable care would disclose when facts are known from which the inference flows.").

"Harm" in this instance is limited to harm in the legal sense, "i.e., a collection of facts that the law is prepared to recognize as constituting the 'harm' element of a claim for professional negligence." Stevens v. Bispham, 851 P.2d 556, 560 (Or. 1993)(en banc).

The question of when a person reasonably should have known facts that would make a reasonable person aware of a substantial possibility that the harm suffered from an attorney's negligence is generally a question of fact, Stevens, 851 P.2d at 560, unless the facts are such that no triable issues exists and the matter

-15-

may be resolved as a matter of law. Cairns, 99 P.3d at 784. Here, the parties agree that no triable issues exist, and we discern none on the record. Thus, this matter was properly resolved on summary judgment.

None of the cases cited by Appellants or that we located hold, as Appellants contend, that a client's claim for legal malpractice does not accrue until some final adjudication has been entered in the underlying action. In fact, in one case cited by Appellants, Jaquith v. Ferris, 687 P.2d 1083, 1085-86 (Or. 1984)(en banc), the Oregon Supreme Court rejected that exact argument.

In Jaquith, the plaintiff retained a real estate agent to sell her real property. Id. at 1083. The agent negligently represented that the listed sale price of the property equaled its fair market value. Id. at 1084. The fair market price exceeded its sale price. Plaintiff sued the agent for professional negligence after losing a specific performance suit brought by the buyer. Id. In defense of the agent's statute of limitations argument, the plaintiff claimed that her cause of action did not accrue until she was forced to convey her property at a substantial loss pursuant to the Court of Appeals decision in the underlying suit. Id. at 1085. Determining that plaintiff had become aware of her agent's negligence four months after she signed the sale contract and not when the underlying litigation had been resolved, the Oregon Supreme Court concluded that the occurrence of harm occurred when Plaintiff discovered the property value discrepancy and that discovery determined the accrual of her claim. Id. at 1085-86. Thus, based on the facts of the case, the

-16-

court determined that the limitations period began to run as soon as the plaintiff knew of the negligence and of the resulting harm, which included attorney's fees she incurred defending the underlying action.

Appellants also cite Fliegel v. Davis, 699 P.2d 674 (Or. App. 1985), rev den. 704 P.2d 513 (1985). Appellants point to the Oregon Court of Appeals' statement that "[i]t is unrealistic to require a client to recognize that the lawyer's advice is bad, even after being sued for acting on it, until there no longer exists a realistic possibility that a court will hold that the advice was good." Id. at 675-76. Notably, Fliegel, as with all cases cited by Appellants, involved a statute of limitations involving specific facts and not the accrual of a claim for purposes of determining a property interest. In Fliegel, the plaintiff did not know and could not have known of the attorney's negligent advice until the Oregon Supreme Court reversed the Oregon Court of Appeals in a related contract case. Id. at 676.

While Fliegel may support Appellants' argument to an extent, it certainly does not stand for the absolute "final adjudication" rule Appellants advocate. Further, Oregon courts have repeatedly held that a claim for legal malpractice accrues when the client knows or "should know" a substantial possibility exists that he or she has an actionable injury. Kaseberg, 265 P.3d at 781; Stevens, 851 P.2d at 559; Guirma, 316 P.3d at 319; Cairns, 99 P.3d at 784. In other words, certainty of harm is not required and to impose such a requirement as Appellants suggest would render the discovery standard of "should know" nugatory.

Contrary to Appellants' argument, the underlying action need

-17-

not be finally resolved for a legal malpractice claim to accrue in Oregon, even for statute of limitations purposes. It may be, depending on the facts of the case, that no such claim will accrue until a final resolution occurs as the Oregon Supreme Court found in Davies. 548 P.2d at 969-70. However, Appellants are incorrect that no such claim can ever accrue **until** then. Appellants make the same mistake made by the plaintiff in Jaquith; they conflate the discrete concepts of cognizable "harm" with "extent of damages." Appellants' position is further undermined by the fact that they filed a malpractice action against Debtor's attorneys in September 2013, **before** the bankruptcy court ruled on the cross motions for summary judgment, where they argued (and still argue) that the claims had not yet accrued. Clearly, Appellants must have had a good faith belief even then that the Malpractice Claims had accrued for statute of limitations purposes. They cannot, therefore, credibly argue on appeal that the Malpractice Claims will not accrue until the state court renders a final disposition against Debtor in the Class Action.

Whether we analyze accrual of the Malpractice Claims for purposes of determining the debtor's interest in property or the expiration of the statute of limitations, assuming under Cusano that a different standard applies, we conclude the Malpractice Claims accrued prior to Debtor filing its chapter 11 bankruptcy petition.[7] Debtor's representations in the Settlement Agreement clearly establish that the Malpractice Claims accrued prepetition.

---

[7] When a chapter 11 case is converted to a case under chapter 7, the preference period is measured from the date of the filing of the chapter 11 petition. See § 348(a).

-18-

The $1.6 million stipulated judgment against Debtor is a cognizable harm and Debtor knew a substantial possibility existed that it suffered harm as a consequence of its attorneys' negligent legal advice. Even if for some reason the stipulated judgment is not a cognizable harm because the Settlement Agreement has not been approved by the state court overseeing the Class Action,[8] no one disputes that Debtor had incurred expenses in defending itself against Appellants on claims Debtor knew, at some point prepetition, resulted from its attorney's professional negligence. See Jaquith, 687 P.2d at 1086 (the incurrence of attorney's fees in defending the underlying action can constitute cognizable "harm")(citing Davies, 548 P.2d at 969).

Absent Debtor's prepetition assignment to Appellants, the Malpractice Claims would have been property of the estate. As such, the assignment was an avoidable preferential transfer under § 547(b). Accordingly, the bankruptcy court properly granted summary judgment to Trustee and denied summary judgment to Appellants. Because we are affirming the judgment on this basis, we need not address Appellants' arguments that the bankruptcy court erred in concluding the transfer would still be avoidable even if the Malpractice Claims had not yet accrued as of the petition date or that the bankruptcy court erred in determining that a non-individual debtor is unable to acquire property

---

[8] Washington Court Rule 23(e) provides:

Dismissal or Compromise. A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

-19-

postpetition.

**B.    The bankruptcy court did not err in denying an award of attorney's fees to Appellants.**

Appellants contend the bankruptcy court erred in not awarding them attorney's fees for defending against Trustee's preference action, an action they claim is a subsequent proceeding related to the Class Action which involved recoverable wages. The bankruptcy court ruled, without citing to any authority, that as a matter of federal law a party defending a preference action is generally not entitled to recover attorney's fees. The bankruptcy court is correct.

This Panel has held that attorney's fees are not recoverable in an action under § 547(b) (absent certain exceptions not relevant here), even if the parties' underlying contract provided for attorney's fees. See Alvarado v. Walsh (In re LCO Enters., Inc.), 180 B.R. 567, 570-71 (9th Cir. BAP 1995), aff'd, 105 F.3d 665 (9th Cir. 1997). This conclusion is because a preference action under § 547(b) is based wholly in bankruptcy law, is unique to bankruptcy and is not an action under the contract which gives effect to the attorney's fees clause in the contract. Id. We see no reason to make any distinction here, where the fees are provided under a state statute. Trustee's action against Appellants did not involve the recovery of wages; it involved the avoidance of a preferential transfer made to them. Further, Appellants did not prevail in this litigation.

## VI. CONCLUSION

For the reasons stated above, we AFFIRM.

-20-